UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ONTRAYIS KEITH**, | ) | Case No. 3:08 CV 1501 |
| | ) | |
| Petitioner, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **PHILLIP KERNS, Warden** | ) | (Regarding ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Ontrayis Keith is a state prisoner convicted of aggravated robbery with firearm specification who seeks *pro se* federal habeas corpus review of his conviction pursuant to 28 U.S.C. §2254. He has exhausted his state remedies and is now before this federal district court with the following four constitutionally-based grounds for federal habeas corpus review:

> **GROUND NO. 1:** Petitioner was denied due process in violation of 14th Amendment when the out-of-court identification was made in a manner to be impermissibly suggestive.
>
> **GROUND NO. 2:** Petitioner was denied due process in violation of 5th and 14th Amendment when court refused to exclude testimony of layman concerning palm print identification.
>
> **GROUND NO. 3:** Petitioner was denied equal protection under the U.S. Constitution when his right to confront under the Confrontation Clause of the 6th Amendment was infringed upon at trial.
>
> **GROUND NO. 4**: Petitioner was denied due process 14th  Amend. right to grand jury indictment when state omitted element of offense in Indictment. [1]

This matter has been automatically referred to the undersigned for report and recommended disposition pursuant to Local Rule 72.2.

---

[1]  Keith's motion to allow withdrawal of this fourth ground as an unexhausted claim has been denied. (See ECF # 5). This ground has been exhausted.  As shall be explained later in more detail,  Keith 's fourth ground is based on the subsequent decision in *State v. Colon*, 118 Ohio St. 3d 26 (2008), and retroactive application of this decision is unavailable.  Thus has no recourse in state court and the ground is exhausted. See 28 U.S.C. §2254(b)(1)(B)(I).

3:08 CV 1501                                    2

**History:**

Keith was tried before a jury in Allen County, Ohio Common Pleas Court on June 12 and 13, 2006. There were two counts of aggravated robbery tried involving Keith. The first count involved a robbery at Crazy's Wings & Things, an eatery in Lima, Ohio (hereinafter referred to as "Crazy's") and the second count of aggravated robbery involved Lynn's Pawn Shop (hereinafter referred to as "Lynn's"), also in Lima, Ohio. Both counts included firearm specifications. Keith originally had been indicted on these charges with co-defendant Shaiton Andrews, but the trials of these individuals were separated.  Keith had moved to sever the counts for separate trials on each of the robberies, but this request was denied. (See Trial Tr. Vol. I p. 3, ECF # 17 p. 10/344). Ultimately, Keith was acquitted on the second count of aggravated robbery charge at Lynn's, but convicted and sentenced to 13 years on the first count of aggravated robbery at Crazy's. See *State v. Keith*, 2007 WL 2579619 at ¶¶ 2, 28, 2007-Ohio-4632 (Ohio App. 3d Dist.).


Keith has exhausted his state judicial remedies. He appealed from the jury's decision that he had robbed Crazy's, but on September 10, 2007 the state appellate court  affirmed Keith's aggravated robbery with firearm specification conviction. See *State v. Keith*, 2007 WL 2579619. The Ohio Supreme Court found no substantial constitutional question and dismissed Keith's appeal. See Resp. Ex. 18, ECF # 15-2 p. 163/202; *State v. Keith*, 116 Ohio St. 3d 1507, 880 N.E.2d 483, 2008-Ohio-381(Table Feb. 6, 2008). [2]

---

[2] Keith also pursued an application to reopen appeal under Ohio R. App. P. 26(B) and moved for new trial based on insufficient  indictment referencing the subsequently decided decision in *State v. Colon*, 118 Ohio St. 3d 26 (2008). See  Resp. Ex. 19-24; *State v. Keith*, 118 Ohio St.3d 1435 (Table Jun. 4, 2008). The legal arguments raised in Keith's application to reopen appeal are not germane to Keith's present grounds for habeas review.

3:08 CV 1501                                    3

**Habeas Corpus Standard of Review:**

Federal habeas is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. U.S.,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)(quoting *Reed v. Farley,* 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994)). Federal habeas corpus review is conducted under Congressionally circumscribed rules set out in §2254(d) which allow the writ to be granted in situations where the state court decision is "contrary to" or "an unreasonable application" of "clearly established" Federal law as set forth by  the Supreme Court of the United States or when there is an unreasonable determination of the facts. See 28 U.S.C. §2254(d)(1) and (2).

The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.E.d2d 389 (2000);  *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914(2002). "[I]t is not  'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."  *Knowles v. Mirzayance.* -U.S.-, 129 S.Ct.1411,1419, 173 L.Ed.2d 251 (2009)(quoting *Wright v. Van Patten*, 552 U.S. 120, 128 S.Ct., 743,746-47, 169 L.Ed.2d 583 (2008) (*per curiam*); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007); *Carey v. Musladin*, 549 U.S. 70, 76-77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006).

A state court decision is "contrary to" Supreme Court precedent when either "the state court

3:08 CV 1501                                4

confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision  . . .

and nevertheless arrives at a result different from [Supreme Court] precedent," or   "'applies a rule

that contradicts the governing law set forth' in those precedents."  *Brumley v. Wingard,* 269 F.3d

629, 638 (6th Cir.2001)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146

L.Ed.2d 389 (2000.  See *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144

(2003). When the state decision does not identify what legal precedent or standard was used as the

foundation for its decision, a deferential standard of review applies, which liberally states, "that a

state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result

of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10,

157 L.Ed.2d 263 (2003), quoting *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263

(2000) (*per curiam*).


        Alternatively, a state court decision is an "unreasonable application" of Supreme Court

precedent when the state court identifies the correct governing legal principle from the Supreme

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. See

*Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams*,

529 U.S. at 413. Or conversely stated, "a federal court may grant relief when a state court has

misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which

the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156

L.Ed.2d 471 (2003)(quoting *Lockyer*, 538 U.S. at 76, 123 S.Ct. at 1175). The issue is simply

whether "the state court considered the proper factors and reached a reasonable conclusion." See

*Yarbrough v. Alvarado,* 541 U.S. 652, 669, 124 S.Ct. 2140, 2152, 158 L.Ed.2d 938 (2004).  The

unreasonable application of Supreme Court precedent must, however,  be "objectively"

unreasonable. *Lockyer*, 538 U.S. at 75, 123 S.Ct. at 1174 (citing *Williams,* 529 U.S. at 410, 412,

120 S.Ct. at 1521-22); *Wiggins,* 539 U.S. at 520-21, 123 S.Ct. at 2535. That is, it must be more

than incorrect or erroneous. *Ibid*. When the state court has rendered a decision, the federal

reviewing court may not grant the writ in its "independent review of the legal question." *Lockyer*

*v. Andrade*, 538 U.S. at 75, 123 S.Ct. at 1174; *Yarborough v. Alvarado*, 541 U.S. 652, 665, 124

S.Ct. 2140, 2150, 158 L.Ed.2d 938 (2004).


**I. *Ground 1- Suggestive Pre-indictment Identification:***

*A: Facts and Argument:*

      "The admission of evidence derived from a suggestive identification procedure violates a

defendant's right to due process if the confrontation leading to the identification was 'so

unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant]

was denied due process of law.'" *Haliym v. Mitchell,* 492 F.3d 680, 704 (6th Cir. 2007)(citing

*Stovall v. Denno*, 388 U.S. 293, 301-02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Neil v. Biggers*,

409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). At the heart of this first ground is the

State's use of a surveillance videotape from the robbery at Lynn's. Keith argued that showing the

videotape to Mr. Bruce Bradshaw, the victim of the robbery at Crazy's, created an impermissibly

suggestive inference that both of the persons in that video were the same as the persons who had

robbed Mr. Bradshaw. (See Appellate Brief, p.7, Resp. Ex. 14, ECF # 15-2, p 49/202). The

findings of the state appellate court on this issue were as follows:

> {¶ 4} In May 2006, the trial court held a hearing on Keith's March 2006 motion to
> suppress. At this hearing, Keith called Detective Don Marik, a detective with the
> Lima Police Department, to testify as if on cross-examination. Detective Marik
> testified that he was the lead detective on this case; that there was a videotape
> obtained from Lynn's, which depicted the robbery (hereinafter this videotape is

3:08 CV 1501                                    6

referred to as "the videotape"); that prior to apprehending any suspects, the videotape
was provided to the local television stations in Lima in order to broadcast the
robbery on their nightly news broadcasts; that the videotape was given to the
television stations to see if anyone from the general public might recognize the
individuals involved in the robbery; that after the television stations played the
videotape, Diana Ross, (fn. 1) a janitor at the police department, viewed the
videotape footage played on the television and identified Keith as one of the two
persons involved in the Lynn's robbery; and, that Joy Williams, a customer at Lynn's,
and other anonymous persons identified Keith as one of the two persons involved in
the Lynn's robbery.

Fn. 1. Ross is related to Keith.

{¶ 5} Detective Marik also testified that a day after Crazy's was robbed, Bruce
Bradshaw, the owner of Crazy's, came to the police station and viewed the videotape
to determine whether any perpetrators looked familiar; that he initiated contact with
Bradshaw; that Bradshaw indicated that the two individuals in the videotape were
the same two individuals that robbed him hours before; that he showed the videotape
to Bradshaw two or three times; and, that Bradshaw was quite certain the first time
he saw the videotape that the same individuals had robbed him. At the conclusion of
the hearing, the trial court denied Keith's motion to suppress.

{¶ 6} In June 2006, a jury trial was held, during which the following testimony was
presented:

{¶ 7} Bradshaw testified that on December 1, 2004, at approximately 9 a.m., he was
working alone at Crazy's and a man came into the store and purchased a fruit punch;
that at approximately 10:30 a.m., the same man came back to the store and while he
was greeting this customer, another man appeared from hiding; that the
man, who appeared from hiding, was wearing a hooded sweatshirt with the hood
pulled up, sunglasses, and a rag on his head, pointed a pistol at him, and asked for
all of his money; that he was within six feet of the man pointing the pistol at him;
that he handed the cash register drawer to the man who was in the store earlier; that he believed the
cash register drawer contained $170.00; that he activated his alarm system in the store; and, that the
man to whom he handed the cash register drawer left the store and the man with the pistol fired it at
him before leaving. Bradshaw continued that he later was able to identify one of the men from the
videotape and that the same two men who robbed him were on the videotape.

{¶ 8} On cross-examination, Bradshaw testified that he saw the man who pointed the
gun at him, but did not remember what color pants the man was wearing; that he had
to open the cash register for the men and handed the drawer to the man without the
gun, who was standing in front of him; and, that he noticed a facial tattoo on the man
to whom he handed the cash register drawer.

{¶ 9} Bradshaw also indicated that he has never identified the man with the gun other than noticing he was on the videotape; that the police never showed him a photo lineup or took him to a lineup to identify the person who had the gun; that he previously testified in the case of the other robber; that he believed both men were the same height; that he became aware of the robbery at Lynn's, because he watched the video of the robbery on television; that he was also called by Detective Marik, who asked him to come to the police station to view the videotape, to see if he recognized the two people on the videotape; and, that the men on the videotape appeared to use the same gun and were dressed the same.

{¶ 10} On redirect examination, Bradshaw indicated that he did not know whether the two  men who robbed him were the same height and that the man to whom he handed the cash register drawer was previously inside the store and had purchased a beverage.

                         * * * *

{¶ 20} On cross-examination, Detective Marik indicated that he was the lead detective on the case; that he assumed Keith fled the area, because he was unable to find him; that by viewing the videotape, he was able to determine that Keith was the second offender; that he was able to make this determination after he viewed a photograph of Keith and watched the videotape "several times" (tr. p. 364); * * * that he did not use either a photo or a person lineup to allow [Lynn] Lamb or Bradshaw to identify Keith; that he did not use a photo lineup, because the photograph he had was not a good photograph and Keith was apprehended thirteen months after the robberies; and, that he was concerned with Bradshaw and Lamb's ability to pick Keith out of a lineup thirteen months after they were robbed.

{¶ 21} Detective Marik also noted that he showed the videotape to Bradshaw the day after the robbery occurred at Crazy's; that he contacted Bradshaw and informed him that he had a couple of people on a surveillance video who robbed a store the same day that Crazy's was robbed; that Bradshaw indicated to him that he was very sure that the same two individuals who were on the videotape were the same two individuals that robbed him just hours before; and, that Bradshaw has never identified Keith in any other way other than watching the videotape.

*State v. Keith,* 2007 WL 2579619, at *1-5.

The state appellate court concluded there had been no unduly suggestive confrontation:

3:08 CV 1501                                  8

{¶ 37} Here, Keith asserts that the State's method was unduly suggestive because
Detective Marik contacted Bradshaw, notified him that the videotape depicted a
robbery that occurred the same day as the robbery at Crazy's, and wanted Bradshaw
to determine whether the two men who robbed him were the same men depicted in
the videotape.

{¶ 38} Upon our review of the record, we cannot find that Detective Marik's tactics
were unduly suggestive. Since Keith was not in custody when Detective Marik asked
Bradshaw to view the videotape, we do not see how Detective Marik's inquiry
suggested that Keith was in fact the perpetrator. Also, while Keith is correct in noting
that the videotape depicted a robbery, which occurred the same day as the robbery at
Crazy's, we do not find that watching a video depicting a robbery would
suggest that the same men actually robbed Bradshaw.

*Keith* 2007 WL 2579619, at *8.

B. *Application of Governing Law-*

(I) *First Step of Analysis of Suggestiveness under Neil v. Biggers:*

On appeal the state decision referred to the criteria from the governing cases of *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), [3] *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.E.d2d 1199 (1967). See *Keith*, 2007 2579619, at *7-8.  The state decision recognized the correct governing law so this matter has progressed past the issue of whether the state court decision was "contrary to" clearly established federal law. Keith must now show an  "unreasonable application" of such law. See *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams v.*

_____

[3] Note: *Neil v. Biggers*, extended *Simmons* into matters where there was no clear in-court identification. See *Id*., 409 U.S. at 198 n.5, 93 S.Ct. at 381 n.5. The Supreme Court remarked that the controversy over whether the victim made an in-court identification was irrelevant.  Later, in *United States v. Owen*, 484 U.S. 554, 108 S.Ct. 838, 93 L.Ed.2d 951 (1988), the Supreme Court picked up at this point to explain that the victim's out-of-court pre-indictment identification of the assailant was admissible as non-hearsay and not a violation of the Confrontation Clause, where, as here, the victim, while unable to make an in-court identification but was present and subject to cross-examination.

3:08 CV 1501                                9

*Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Railey v. Webb,* 540 F.3d 393,

414 (6th Cir. 2008); *Williams v. Coyle,* 260 F.3d 684, 699-700 (6th Cir. 2001). Keith must show that

the state decision applied *Simmons, Manson,* and *Biggers* to the facts of the case in an *objectively*

unreasonable manner. See *Rompilla,* 545 U.S. at 380, 125 S.Ct at 2462; *Bell v. Cone,* 535 U.S. 685,

698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams,* 529 U.S. at 409-410.


     To determine whether pretrial identification was irreparably suggestive requires a two-step

inquiry of first assessing whether the confrontation procedure was unnecessarily suggestive, and if

so, then whether the identification was nonetheless reliable considering the "totality of the

circumstances." See *Neil*, 409 U.S. at 380-81(quoting *Stovall*, 388 U.S. at 301-02(" the defendant

could claim that 'the confrontation conducted . . . was so unnecessarily suggestive and conductive to

irreparable mistaken identification that he was denied due process of law.'"); and see *Neil*, 409 U.S.

at 199-200 ("We turn, then, to the central question, whether under the 'totality of the circumstances'

the identification was reliable even though the confrontation procedure was suggestive."); *Mills v.*

*Carson*, -F.3d-, 2009 WL 1975579, at \*3 (6th Cir. 2009); *Howard v. Bouchard*, 405 F.3d 459, 469,

*cert. denied,* 546 U.S. 1100 (2006).


     The purpose of the state court's reference to Keith not being in custody (¶ 38) is a bit

obscure, but this relates to the principle that such identifications are unduly suggestive for "[a]n

individual's appearance in a line-up suggests to a witness that the person is in police custody for

some reason." *Thigpen v. Cory,* 804 F.2d 893, 896 (6th Cir. 1986). There was no line-up, so the

state decision's comment appears to be more gratuitous than significantly analytical.

3:08 CV 1501                                    10

The state decision, though, did conclude that there had been no suggestive pre-indictment identification by Mr. Bradford.  Mr. Bradshaw was confronted with a single videotape of a robbery-in-progress at another location.  The procedure utilized was arguably more prejudicial than a line-up and can be analogized to an identification made from a single photograph. See *Simmons v. U.S.,* 390 U.S. at 383 [4] ; *United States v. Meyer*, 359 F.3d 820, 825 (6th Cir. 2004)(single photograph display); *United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir. 1987)(same); compare *U.S. v. French*, 2008 WL 220727 (D. Colo.)(witness not initially shown  surveillance video but shown photo array containing defendant's photo).  The danger of misidentification was increased from display of a single videotape and enhanced by the fact that the culprits caught on tape were shown committing the same offense, and by implication,  guilt is much stronger than a mere line-up. The state appellate court's reasoning was arguably an objectively unreasonable application of  *Simmons v. U.S.* (See note 2).  However, there is a second step to the inquiry procedure of *Neil v. Biggers*.


*(ii)  Second Step of Analysis of Suggestiveness under Neil v. Biggers:*

In both *Neil* and *Manson*, the Supreme Court rejected a *per se* rule that would exclude an in-court identification following a suggestive pre-indictment confrontation and focused on the "totality

---

[4] "[P]olice may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized."

*Simmons v. U.S.*  390 U.S. at 383, 88 S.Ct. at 971.

3:08 CV 1501                                11

of the circumstances" approach, stressing that the admissibility of the in-court identification

testimony is determined under the five-factor test from *Neil v. Biggers*. See *Neil*,  409 U.S. at 199-

200; *Manson,* 432 U.S. at 111- 114. [5]  The reviewing court engages in a balancing test, weighing the

factors listed in *Neil v. Biggers, supra*, against the "corrupting effect of the suggestive identification

itself."  *Manson,*  432 U.S. at 114; and see *Mills v. Carson*, -F.3d- , 2009 WL 1975579, at *4 (6th Cir.

2009).


While the state court decision that the pre-indictment identification procedure was not

suggestive was arguably an  objectively unreasonable interpretation of *Simmons*, the state decision's

analysis did not end there. The state court decision next engaged in analyzing this situation under the

"totality of the circumstances," as instructed by U.S. Supreme Court precedent.  The Ohio Court of

Appeals conceded in its decision that it may have been incorrect in this first part of the analysis, and

alternatively engaged in review of the five-factors from *Neil v. Biggers, in arguendo* that the pre-

indictment identification was unduly suggestive:

> [W]e cannot find that under the totality of the circumstances that Bradshaw's
> identification was unreliable. While it is true that Bradshaw never actually identified
> Keith as the man who robbed him, Bradshaw noted that the man who appeared from
> hiding was wearing a hooded sweatshirt with the hood pulled up, sunglasses, and a
> rag on his head, but did not know what color pants he was wearing. Bradshaw also
> indicated that the man pointed a pistol at him, asked for all of his money, was
> standing within six feet of him, and fired the pistol at him before leaving. Bradshaw
> stated that the two men in the videotape were the same men who robbed Crazy's and
> that the men on the videotape appeared to use the same gun and were dressed the
> same. Additionally, Bradshaw viewed the videotape the day after Crazy's was robbed.

---

[5]  These five factors are: (1)  the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention at the time of observation; (3)  the accuracy of the witness's prior description of the criminal; (4)  the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.  *Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199-200.

3:08 CV 1501                                          12

*Keith*,  2007 WL 257961, ¶ 39.


This alternative analysis included apparent consideration of: the first factor of opportunity to view (six feet away); the second factor of degree of attention (he had a gun pointed at him); the third factor of  accuracy of prior description (hooded sweatshirt, sunglasses, and rag) [6]; the fourth factor of level of certainty(they were the same men); and the fifth factor of length of time (the day after). The state decision acknowledged the correct factors for adjudicating this claim, and consequently, on this critical aspect of the state decision and the state court's reasoning was not an objectively unreasonable application of clearly established Federal law since the "totality of the circumstances" had been in fact taken into consideration.


Since the Supreme Court has rejected a *per se* rule to exclude suggestive pre-indictment identification, any flaw in the  analysis of the first step of suggestive pretrial identification procedure became clearly harmless in light of the state decision's inclusion of the "totality of the circumstances" in accord with *Neil v. Biggers*.  Granted the state decision found that Detective Marik had deliberately opted not to chance using a photo array or line-up for fear that Mr. Bradshaw would be unable to make an identification (¶ 20).  However, official discretion not to apply a more

---

[6] There is some question surrounding the third factor of the accuracy of the witness's prior description.  At the suppression hearing, Detective Marik testified that he had not discussed the matter with Mr. Bradshaw except to tell him that he had a videotape of a robbery at Lynn's for him to review to see if anyone looked familiar (Suppression Hrg. p. 23-27, ECF # 16).  Mr. Bradshaw testified at trial that he gave a description of Keith to the police as wearing a green hooded sweatshirt, sunglasses and "one to those rag things" on his head. (Trial Tr. p. 220, ECF #17 p. 227/344). It is not clear whether Mr. Bradshaw's description was provided before viewing the videotape.  A fair interpretation of this record indicates that there had been a prior description given to the police, as would be a reasonable reading of the state court's application of the "totality of the circumstances."  Keith has not rebutted this by clear and convincing evidence. See 28 U.S.C. §2254(e)(1). Consequently, the state appellate court decision aligning Mr. Bradshaw's testimony with the third factor under *Neil v. Biggers* of the accuracy of the prior description was not based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. §2254(d)(2).

3:08 CV 1501                                              13

court-sanctioned means of identification is not one of the *Neil* factors. There is no implicit "due

diligence" requirement for pre-indictment identifications.  Accordingly, "it was not unreasonable for

the [Ohio] Court of Appeals to find that [Keith's] in-court identification was sufficiently reliable to

protect Petitioner's due process rights." See *Mills v. Carson*, -F.3d- , 2009 WL 1975579, at *4.

**II. *Ground 2- Palm Print Evidence:***

*A. Facts and Argument:*

   Officer Hammond testified for the prosecution that a palm print found at Crazy's was

Keith's, but Officer Hammond's predecessor, retired Lima detective and identification Officer

Monfort countered Officer Hammond's testimony for the defense. Keith argues that the admission of

Officer Hammond's testimony constituted a denial of due process because Officer Hammond was a

"layman." Respondent contends that Keith's second ground has been procedurally defaulted for

failure to "fairly present" it to the Ohio Supreme Court, so federal  review of this second ground is

barred.

*B. Fair Presentation:*

   "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to

resolve any constitutional issues by involving 'one complete round' of the state's appellate review

system."  *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003), quoting *O'Sullivan v. Boerckel*, 526

U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The state courts must be afforded "a

meaningful opportunity to consider allegations of legal error without interference from the federal

judiciary."  *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *Rose v.*

3:08 CV 1501                                           14

*Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The substance of the federal

claims submitted for habeas corpus review must be "fairly presented" to the state's highest court

because only in this manner will the state courts have been provided with a fair opportunity to pass

upon and correct alleged violations of federal rights.  See *Anderson v. Harless*, 459 U.S. 4, 6, 103

S.Ct. 276, 74 L.Ed.2d 3 (1982);  *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438

(1971); *Duncan v. Henry*, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865, 868 (1995); *Baldwin v.

Reese*, 541 U.S. 27, 32-34, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). "A claim may only be considered

'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state

courts." *Jacobs. v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d at 681.

Whether a petitioner has "fairly presented" the same claim in the state courts is determined by

whether petitioner can show:

      (1) reliance upon federal cases employing constitutional analysis;

      (2) reliance upon state cases employing federal constitutional analysis;

      (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular

      to allege a denial of a specific constitutional right;  or

      (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005); *Brigano*, 228 F.3d at 681; *Franklin v. Rose*,

811 F.2d 322, 326 (6th Cir. 1987), *cert denied*, 532 U.S. 958 (2001).


*C. Analysis:*

      Fair presentation hinges on whether Keith presented this argument to the Ohio Supreme

Court. In his second proposition of law to the Supreme Court of Ohio, Keith argued that "[a]

layperson cannot establish the foundation necessary for introduction of the results of a fingerprint

3:08 CV 1501                                             15

analysis performed by a computer." (See Resp. Ex. 17,  Memorandum in Support of Jurisdiction p.

13, ECF # 15-2 p. 129/202). His claimed Identification Officer Hammond was not certified as an

expert in the operation and analysis of the Automated Fingerprint Identification System and its

generated results.  Keith urged the Ohio Supreme Court to, "review this type of evidence in light of

Evid. R. 702(A), the Due Process Clause of the United States Constitution and of the Ohio

Constitution, and fundamental fairness." ( Resp. Ex.17, p. 14).


        Respondent argues that Keith's  mere mention of "Due Process" to the Ohio Supreme Court

without explanation of how  due process was violated does not "fairly present" a due process claim

according to governing precedent from *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000). (Ex.15,

pp.18-19). Respondent adds that the petitioner's "fair presentation" of this claim to the Third District

Court of Appeals does not negate the fact that the claim is procedurally defaulted before the Ohio

Supreme Court.


        Respondent is correct. State judges are not required to be mind readers nor are they required

to adjudicate unfathomably vague arguments.  As presented to the Ohio Supreme Court, Keith's

proposition of law did not rely on any case law employing constitutional analysis, a sufficiently

particular claim of denial of a specific constitutional right, nor was there allegations of fact within

the  "mainstream of constitutional law."  Keith's argument may have been a feeble attempt to invoke

the rule from *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125

L.Ed.2d 469 (1993), that for scientific testimony to be admitted there must be validation, which

requires more than subjective belief or unsupported speculation. This, though, is a governing

3:08 CV 1501                                      16

evidentiary principle under Evid. R. 702 for expert testimony, not a claim within the constitutional mainstream.

Alleged error in matters of admission of evidence are not cognizable in federal collateral review. See *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000); *Hutchinson v. Marshall*, 744 F.2d 44, 46-47 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985). Keith's references to the Due Process Clause and fundamental fairness are "not sufficient to alert a state court that an appellant is asserting the violation of a specific constitutional right." *McMeans,* 228 F.3d at 682.

Keith's fallback position is that his ground asserts a "denial of fundamental fairness," an exception to the general rule against federal habeas review of evidentiary questions.   However, other than this naked claim, Keith does not demonstrate that the admission of this testimony unfairly impaired his ability to present a defense. Constitutional concerns do exist over exclusion of evidence from the jury's hearing which restricts a defendant's fundamental right to present his defense. See *Fry v. Pliler*, 551 U.S.112, 127 S.Ct. 2321, 2324, 168 L.Ed.2d 16 (2007); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); and see *Fleming v. Metrish*, 556 F.3d 520 (6th Cir. 2009); *Brown v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999). Keith's defense expert did testify so the circumstances come nowhere close to presenting  a denial of fundamental fairness claim.

Failure to fairly present the federal ground to the state's highest court constitutes a procedural  bar to federal habeas corpus review and the failure to present the ground to the state's

3:08 CV 1501                                17

highest court provides an adequate and independent state procedural rule to bar habeas review.  See

*Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994);

*Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied,* 546 U.S.821 (2005).


*D. No Cause to Excuse Lack of Fair Presentation:*

        Keith may overcome a procedural bar by a  demonstration of "cause" and "prejudice" to

excuse the failure to present a constitutional claim to the state's highest court, or alternatively by

showing actual innocence.  See *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1590-

1592, 146 L.Ed.2d 518 (2000); *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 2076, 165 L.Ed.1

(2006); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971). Keith does not

present any argument for either cause or prejudice. Further, actual innocence means "factual

innocence not mere legal insufficiency."  *Bousley v. U.S.*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140

L.Ed.2d 828 (1998).   Keith has not  produced new evidence of innocence as required.  See *Schlup v.*

*Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Any claim that Officer Hammond

did not have the qualifications to testify as an expert would not negate the other evidence in support

of Keith's guilt, nor would it create "factual innocence." As a result, the procedural bar to federal

habeas corpus review for failure to "fairly present" a federal constitutional claim has not been

overcome.


**III. Ground three- Denial of Confrontation:**

*A. Facts and Argument:*

        The Sixth Amendment, applicable to the States through the Fourteenth Amendment, provides

3:08 CV 1501                                          18

that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the

witnesses against him." *Harrington v. California*, 395 U.S. 250, 252, 89 S.Ct. 1726, 23 L.Ed.2d 284

(1969); *Coy v. Iowa*, 487 U.S. 1012, 1015, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988). The

Confrontation Clause bars the admission of out-of-court statements that are "testimonial," unless the

witness has been established to be  unavailable and the defendant has had a prior opportunity for

cross-examination. See *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177

(2004); *United States v. Buffington,* 310 Fed.Appx. 757, 760 (6th Cir. Feb. 9, 2009); *United States v.*

*Cromer,* 389 F.3d 662, 670-71 (6th Cir. 2004). The right of confrontation is violated with the

admission of "testimonial" hearsay. See *United States v. Gibbs,* 506 F.3d 479 (6th Cir. 2007).


    Keith claims that the trial court admitted hearsay testimony from Detective Marik which

described how Keith's mother and sister, Diana and Tarissa Ross, identified him as the perpetrator

from the surveillance videotape of the Lynn's robbery. Keith explains that his mother and sister were

not present at trial, and as a result, there was no opportunity to cross-examine them, and that  the

State failed to establish their unavailability.


*B.  No Fair Presentation of Prosecutorial Misconduct Claim:*

        Imbedded in this third ground of Keith's petition, he asserts also that his constitutional rights

were violated by prosecutorial misconduct when the State went on to repeat hearsay from Detective

Marik's testimony in its closing arguments. As in the second ground for relief, respondent contends

that Keith had procedurally defaulted on both the Confrontation Clause and the prosecutorial

misconduct grounds for relief.  Respondent is correct insofar as Keith procedurally defaulted on his

3:08 CV 1501                                    19

prosecutorial misconduct claim. There was no argument for prosecutorial misconduct made to the

Ohio Supreme Court, unless one can exaggerate Keith's reference to "prosecutor trick" in the use of

hearsay statements as a separate claim. Keith failed to raise his argument for prosecutorial

misconduct with terms sufficiently particular to allege a denial of this specific constitutional right,

or with facts well within the "mainstream of constitutional law." See *McMeans*, 228 F.3d at 681. As a

result*,* federal habeas review of this aspect of the third ground is barred since there is no "cause" to

excuse the failure to fairly present a prosecutorial misconduct argument. See *Leroy v. Marshall*, 757

F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d

189, 194 (6th Cir. 2004), *cert. denied,* 546 U.S.821 (2005).


*C. Confrontation Clause Challenge was "Fairly Presented":*

Respondent incorrectly contends that Keith's argument to the Ohio Supreme Court consisted of

only the mere mention of a phrase invoking a constitutional right. Keith not only explained to the

Court exactly how his rights were violated, but he went on to explain the detrimental effect that this

violation will have on the Confrontation Clause itself . [7] Unlike his second proposition, Keith went

beyond merely asserting a few brief references to the Confrontation Clause. See *McMeans,* 228 F.3d

at 682. In his appeal to the Ohio Supreme Court, Keith clearly referenced the Confrontation Clause

on four different occasions and linked it to hearsay with respect to uncalled witnesses (Resp. Ex.17,

Memorandum in Support of Jurisdiction pp. 14-15, ECF # 15-2 pp. 130-31/202). Although, Keith

---

[7] In his appeal to the Ohio Supreme Court Keith complained about what he termed "embedded hearsay" contrary to the Confrontation Clause in testimony which allowed the State of Ohio to identify him as one of the robbers at Lynn's from two witnesses who had not testified in court. (Ex. 17, pp. 8-9, ECF # 15-2 124-25/202). He went on to argue, "The substitute attempted [sic] has been to ask a law enforcement investigator who spoke to those [sic] witness what the witnesses said." Keith adds that, "the Third District has just endorsed this prosecution trick as a fair tactic, thereby effectively amending the Ohio Rules of Evidence and erasing the Confrontation Clause." (Ex.17, pp.14-15).

3:08 CV 1501                                    20

failed to reference any federal constitutional precedent in his appeal to the Ohio Supreme Court, he

had phrased his claim both in terms of constitutional law and in terms sufficiently particular to allege

a denial of a specific constitutional right and he had  apprised theat Ohio Supreme Court of the

relevant facts "that are well within the mainstream of constitutional litigation." See *Whiting*, 395 F.3d

at 612-13; *McMeans*, 228 F.3d at 681; *Franklin*, 811 F.2d at 326.


*D. State court Findings:*

The unchallenged factual findings in the state decision regarding Detective Marik's testimony

continued from the other findings relating to the surveillance videotape of the Lynn robbery:

> {¶ 18} Detective Marik testified that he was given the videotape and conducted his
> investigation with the aid of the videotape; that the videotape was taken to several
> media outlets in the Lima area in order for the videotape to be played on their
> newscasts; that he was hoping to learn the identity of the perpetrators; and, that there
> was something on the news broadcasts that requested people to contact the police
> department with any information on the suspects.

> {¶ 19} Detective Marik continued that the day after the videotape was played, he
> received the same information from two individuals, which indicated who the two
> suspects in the robbery at Lynn's were; that he already had Andrews, who was the
> taller perpetrator, in mind as a suspect from dealing with him over a number of years;
> that he thought the second perpetrator in the videotape was Keith, but wanted a second
> opinion, which was confirmed through the information that came into the police
> department; that after he found a picture of Keith and watched the videotape several
> times, he was able to identify the shorter perpetrator as Keith; that before watching the
> videotape, he "never had any dealings with [Keith]" (tr. p. 354); that after he
> determined that Keith was a suspect, he had several agencies looking for him in Allen
> County, but they were unable to locate him; that he received information from Crime
> Stoppers that Keith was in Indianapolis, Indiana; and, that Keith was apprehended in
> January 2006.


The fulcrum of  the  state appellate court's decision was that  there was no Confrontation

Clause violation because no hearsay was admitted.  The state court decision found that since

3:08 CV 1501                                           21

Detective Marik's testimony did not "specifically" repeat the information obtained from Diana and

Tarissa Ross, there was no hearsay actually admitted at trial. *Keith,* 2007 WL 2579619, at *12.


          The state court decision began its analysis of Keith's third assignment of error by citing

appropriate U.S. Supreme Court precedent, *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354,

158 L.Ed.2d 177 (2004). *Keith,* at *10. *Crawford* held that under the Sixth Amendment, the

admission of out-of-court statements by witnesses which are testimonial in nature is barred by the

Confrontation Clause, unless the witnesses are unavailable and defendant had a prior opportunity to

cross-examine them . *Id.,* 541 U.S. at 54, 124 S.Ct at 1366. The state court decision clearly indicated

that it comprehended this central thesis from *Crawford.* See *Keith,* at *10-11. It correctly began its

evaluation of Detective Marik's testimony explaining:

          {¶ 50} In *Crawford*, the defendant's wife, exercising her marital privilege, did not
          testify at his trial. *Id*. at 40. Before trial, however, in a tape-recorded statement to
          police, defendant's wife described the stabbing with which her husband was charged.
          *Id*. at 39. The statement conflicted with defendant's claim that the stabbing was in
          self-defense. *Id.* Defendant argued that his wife's statement was not only inadmissible
          hearsay, but violated his Sixth Amendment right of confrontation. *Id.* at 40. The trial
          court determined that the statement, though hearsay, was reliable and trustworthy, and
          the jury was allowed to hear it. *Id*. Defendant was subsequently convicted. *Id.* at 41.


          {¶ 51} On appeal, the United States Supreme Court scrutinized the admissibility of the
          wife's testimonial hearsay statement under the Confrontation Clause. *Id*. at 42-50. The
          Court concluded that "[w]here testimonial statements are at issue, the only indicium of
          reliability sufficient to satisfy constitutional demands is the one the Constitution
          actually prescribes: confrontation." *Id*. at 68-69 (emphasis added). Accordingly, the
          Court held that where testimonial evidence is at issue the Constitution requires
          unavailability and a prior opportunity for cross examination. *Id*. at 68.


          {¶ 52} While the Court determined that unavailability and prior cross-examination
          was required for testimonial evidence, the Court also found that "[w]here
          nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to

afford the State flexibility in their development of hearsay law-as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." Id. (emphasis added.) Accordingly, the Court held that with nontestimonial hearsay the *Ohio v. Roberts* (1980), 448 U.S. 56, reliability test still applies.

{¶ 53} Finally, while the Court in *Crawford* did not "spell out a comprehensive definition of 'testimonial,' " it did give the following examples of what may be included as testimonial statements:

> **'[E]x parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'**

*Id*. at 51-52. (citations omitted.)

{¶ 54} Thus, under *Crawford*, the first issue is whether the testimony is testimonial or nontestimonial. While the [Supreme] Court did not specifically define testimonial, the above examples show that statements made during a police investigation or court proceedings will qualify as testimonial. *U.S. v. Cromer* (6th Cir.2004), 389 F.3d 662, 672-73. Additionally, it seems that statements made under circumstances that would lead a reasonable person to conclude that such statements would later be available for use at trial also qualify as testimonial under *Crawford. Crawford*, 541 U.S. at 52; see, also, *Cromer,* 389 F.3d at 673.

{¶ 55} Turning to the testimony at issue, Detective Marik provided the

following testimony on redirect examination:                    * * *

Q: Now, one other area here. We've talked a lot about the information you got, the calls you got the next day and the people you talked to the next day that led you believe (Sic.) that this defendant was involved in this. Tell us who those people were, if you can?

3:08 CV 1501                                23

Mr. Fisher: Objection, your honor.

The Court: Overruled.

Q: I mean who were those people?

A: One (1) was his sister and the other would have been Diane-Diane Ross. Tarissa Ross was his sister that had given us that information and Diana Ross, the mother, concurred with that. They had both seen-

Mr. Fisher: Objection as to what they said, your honor.

The Court: Sustained.

Q: And from-

Mr. Fisher: I think he can say who called but not the content, in other words.

The Court: That's correct.

Mr. Berry[Prosecutor]: He wasn't giving the content. All he said, sir, was that they concurred. We never got to what they said. I think it's appropriate that they both concurred and that's-

The Court: That's correct but that's as far as it goes.

Mr. Berry[ Prosecutor]: Yea. Okay. Fine.

(Tr. pp. 381-83).

{¶ 56} Upon review of the record, we cannot find that Detective Marik gave any specific hearsay testimony. While Detective Marik did state that he received information from Keith's mother and sister, Detective Marik did not repeat any out of court statements either of them made.

{¶ 57} A trial court's decision on the admissibility of specific evidence is not subject to reversal in the absence of an abuse of discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, para. two of the syllabus. An abuse of discretion has been described as a judgment that is unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. Thus, we review the trial court's decision to allow Detective Marik's testimony under an abuse of discretion standard.

3:08 CV 1501                                        24

{¶ 58} Upon our review of the record, we find that the trial court did not abuse
its discretion in allowing Detective Marik's testimony that he received
information from Keith's mother and sister identifying Keith in the videotape.
First, the trial court limited Detective Marik's testimony to not include what
Keith's mother and sister actually said. Second, Detective Marik's testimony
was used to explain his course of action in the investigation after being
questioned about it during cross-examination. Third, most importantly (and
interestingly), Keith was acquitted on the count of aggravated robbery that
arose from the robbery at Lynn's. Therefore, even if there was error in
admitting the disputed testimony, it was clearly not prejudicial to Keith, as he
was found not guilty, even though he was identified in the videotape as one of
the robbers of Lynn's.

{¶ 59} Accordingly, Keith's third assignment of error is overruled.

*Keith,* 2007 WL 2579619 at *10-12 (emphasis in original).

*E.  Appropriate Standard of Habeas Corpus Review- Deferential:*

The Third District Court of Appeals of Ohio did refer to an appropriate decisional basis from

U.S. Supreme Court precedent -*Crawford  v. Washington.*  Review of this matter normally would have

progressed past the point of whether the state court decision was "contrary to" clearly established

federal law and Keith would be required to show an "unreasonable application" of the law. See

*Rompilla*, 545 U.S. at 380, 125 S.Ct. at 2462; *Williams*, 529 U.S. at 413; *Wiggins*, 539 U.S. at 520-21,

123 S.Ct. at 2535.  Keith presented a straightforward claim of constitutional violation resulting from

denial of  the right of confrontation, but the state appellate court adjudicated the question applying

some semblance of hearsay rules. While *Crawford* appeared in its preamble, the reasoning of the state

appellate decision did not employ *Crawford*'s constitutional principles, but instead lapsed into three

non-constitutional reasons: Detective Marik's  testimony was not actually what the mother and sister

3:08 CV 1501                                          25

said; testimony was used to explain officer's course of action in investigation; and Keith was acquitted of the aggravated robbery charge relating to the robbery where the surveillance video was made. (See ¶ 58). There was no discussion of witness unavailability or prior opportunity for cross-examination, as would have been the case had the state decision tracked *Crawford*.


When the situation where the state decision "disposes of a Federal constitutional claim with little-to-no articulated analysis of the constitutional issue," federal habeas corpus review applies a modified form of deference with a "'careful' and 'independent' review of the record and applicable law" but with the "focus on the result of the state court's decision, applying . . .deference to the result reached, not the reasoning used." *Irick v. Bell*, 565 F.3d 315, 320 (6th Cir. 2009)(quoting *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008); *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000)). Review remains deferential because the district court cannot reverse "unless the state court's decision is contrary to or an unreasonable application of federal law." *Id*., (quoting *Vasquez v. Jones*, 496 F.3d 564, 570 (6th Cir. 2007); and see *Knowles v. Mirzayance,* -U.S.-, 129 S.Ct. 1411, 1419 n.2, 173 L.Ed.2d 251 (2009)(" because Mirzayance has not argued that § 2254(d) is entirely inapplicable to his claim or that the state court failed to reach an adjudication on the merits, we initially evaluate his claim through the deferential lens of § 2254(d)").


*G. Detective Marik's Hearsay Statement was "Testimonial":*

Analyzing a Confrontation Clause matter under hearsay rules, as the state decision had done, is not far-fetched and correct- at a fundamental level. Confrontation Clause cases generally fall into two categories: those involving the admissibility of out-of-court statements and those involving restrictions

3:08 CV 1501                                             26

on the scope of cross-examination.  *Coy v. Iowa*, 487 U.S. at 1015, 108 S.Ct. at 2800. Keith's current

claim falls under the former- the State's use of out-of-court statements. There is a connection between

the Sixth Amendment's Confrontation Clause and hearsay evidence. See *Lilly v. Virginia*, 527 U.S.

116, 125, 119 S.Ct. 1887,1894-95, 144 L.Ed.2d 117 (1999)(citing and quoting,  *Mattox v. United

States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed.2d 409 (1895)). The simple fact is that "the Confrontation

Clause applies only to hearsay." See *United States v. Irby*, 558 F.3d 651, 655 (7th Cir. 2009)(citing

*Crawford*, 541 U.S. at 59-60 n. 9).


        While the scope of the Confrontation Clause has not changed,  its governing rules have

undergone recent modification.  Pre-*Crawford*, the general rule had been that hearsay rules and the

Confrontation Clause protected similar values and hearsay did not violate the confrontation clause

when it fell within a "firmly rooted" hearsay exception or was supported by "particular guarantees of

trustworthiness." See *White v. Illinois*, 502 U.S. 346, 352, 112 S.Ct. 736, 741,116 L.Ed.2d 848 (1992);

*Idaho v. Wright*, 497 U.S. 805, 816-17, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990); *Ohio v.

Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d. 597 (1980).  Under this rule, "firmly rooted"

hearsay exceptions "carr[ied] sufficient indicia of reliability to satisfy the reliability requirement posed

by the Confrontation Clause." *White*, 502 U.S. at 355 n. 8.  This rule was re-examined in *Crawford*,

and the  "firmly rooted" hearsay exceptions became severely restricted to "those exceptions

established at the time of the founding [of this nation]." *Crawford*, 541 U.S. at 36; and see *Giles v.

California*, - U.S. -, 128 S.Ct. 2678, 2682, 171 L. Ed.2d 488 (2008).


        In this post-*Crawford* era, the primary determinative factor is whether the evidence was

3:08 CV 1501                                             27

testimonial or nontestimonial. See *Id.*, 541 U.S. at 51-52.  The Confrontation Clause now is invoked only in those instances of "testimonial" hearsay whereas "[n]on-testimonial hearsay statements may be admitted against criminal defendants if they qualify under the hearsay exceptions, without regard to the defendant's opportunity to cross-examine the declarants or the declarants' unavailability." 5 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* §802.05[3][a], p. 802-22 (J. McLaughlin ed., 2d ed. 2009) (citing *Davis v. Washington*, 547 U.S. 813, 821-25,126 S.Ct. 2266, 2273-2276, 165 L.Ed. 2d 224 (2006)). The state appellate court while acknowledging the distinction between testimonial and nontestimonial evidence, never determined that the out-of-court statements attributed to Diana and Tarissa Ross were "testimonial." See *Keith*, 2007 WL 2579619, at ¶54.


        In *Crawford*, "[t]he Court declined to 'spell out a comprehensive definition of 'testimonial,'' but stated that the term 'applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.'" *United States v. Powers*,  500 F.3d 500, 506 -507 (6th Cir. 2007)(quoting *Crawford v. Washington*, 541 U.S. at 68, 124 S.Ct. at 1374). The Supreme  Court elaborated that "[a]n accuser who makes  a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *(Ibid*.) and further that the term "interrogation" is used in its "colloquial" sense and is applicable to any recorded statement given in response to "structured police questioning." *Crawford*, 541 U.S. at 53 n.4, 124 S.Ct. at 1365 n.4.  This means that "interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator" are "testimonial." *Davis v. Washington*, 547 U.S. at 826, 126 S.Ct. at 2276.

3:08 CV 1501                                                28

These statements about the Rosses' identification of Keith were "precisely what a witness does on direct examination," since they were the type of statement that a reasonable person would anticipate being used "against the accused in investigating and prosecuting the crime." See *Davis v. Washington,* 547 U.S. at 830-31; and see *United States v. Gibbs,* 506 F.3d 479, 486 (6th Cir. 2007); *United States v. Powers,* 500 F.3d 500, 508 (6th Cir. 2007).  Pre-indictment witness identifications utilized at trial are "testimonial." See *Irby*, 558 F.3d at 655; *Powers*, 500 F.3d at 506-07; *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005). **8**


On September 10, 2007 when the state appellate court issued its opinion affirming Keith's convictions it failed to apply "clearly established Federal law" from *Crawford v. Washington*  and *Davis v. Washington*, that the identifications made by Keith's mother and sister were "testimonial." **9**

The next step then is to assess whether these statements were used as hearsay.

---

    **8**  "In applying the first prong of the *Crawford* analysis, we find that Shellee Luster's statement identifying both defendants in the picture is a testimonial statement for the following reasons. First, the statement was given during a police interrogation, which meets the requirement set forth in *Crawford* where the Court indicated that the term "testimonial" at a minimum applies to "police interrogations." 124 S.Ct. at 1374. Second, the statement is also considered testimony under *Crawford's* reasoning that a person who "makes a formal statement to government officers bears testimony." *Id.* at 1364. Finally, we find that Shellee's statement is testimonial under our broader analysis in *Cromer*. In asking "whether a reasonable person in [Shellee's] position would anticipate h[er] statement being used against the accused in investigating and prosecuting the crime," *Cromer*, 389 F.3d at 675, we think that any reasonable person would assume that a statement that positively identified possible suspects in a picture of the crime scene would be used against those suspects in either investigating or prosecuting the offense. For these reasons, we determine that Shellee's statement identifying Walter and Tyreese Pugh was testimonial in nature."

*U.S. v. Pugh,* 405 F.3d 390, 399 (6th Cir. 2005).

    **9**  The reference to pretrial identification being testimonial in *Davis* was arguably *dicta*, but a "squarely established" specific legal rule had been formulated in *Crawford* which included such statements in response to "police interrogation." "Clearly established' law' encompasses more that just bright-line rules laid down by the [Supreme] Court,' and 'includes legal principles and standards enunciated in the Court's decisions.'" *Awkal v. Mitchell*, 559 F.3d 456, 462 (6th Cir. 2009)(quoting *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002)); and see  *Knowles v. Mirzayance.* -U.S.-,129 S.Ct.1411,1419 (2009)(quoting *Wright v. Van Patten*, 552 U.S. 120, 128 S.Ct., 743,746-47, 169 L.Ed.2d 583 (2008) (*per curiam*)(setting out "squarely established" standard)).

3:08 CV 1501                                        29

*H. Detective Marik's Testimony was Hearsay:*

Keith contends that Diana and Tarissa Ross' statements were offered at trial as truth that Keith robbed Lynn's. Rule 801(D)(1)(c) of the Ohio Rules of Evidence provides that "[a] statement is not hearsay if: . . .[t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . (c) one of identification of a person soon after perceiving the person, if the circumstances demonstrate that reliably of the prior identification." This state evidentiary hearsay rule is the analog of Fed. R. Evid. 801(d)(1)(C). [10]  The declarant "is a person who makes a statement." See Ohio Evid. R.801(B); Fed. R. Evid. 801(b). Obviously, Detective Marik was not testifying about his own identification of Keith, but he was testifying about the identification of Keith by third parties, for the truth of those identifications. The detective's statement that Keith's mother and sister had given him information which led him to believe that Keith was "involved in this," constituted hearsay.

---

[10]   The 1980 Staff Notes to Ohio Evid. R. 801(D)(1)(c) explain:

This rule extends the principle recognized in Ohio in *State v. Lancaster* (1971), 25 Ohio St.2d 83. It is identical to Federal Evidence Rule 801(d)(1)(C) except for an added provision for exclusion if the prior identification were made under unreliable circumstances. If a witness has made an identification prior to appearing in court to testify and such identification is the result of the witness having actually perceived the person identified, evidence of such identification is admissible regardless of whether or not the witness can now make an identification. 4 *Weinstein's Evidence* § 801(d)(1)(C) [01] (1977). The rationale for the rule is that the perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the court room. The added provision requires the trial judge to determine whether the circumstances under which the identification was made demonstrates reliability of the prior identification. This grant of discretion tightens the use of this basis of evidence of identification consistent with constitutional requirements. However, nothing in this rule obviates constitutional requirements relating to lineups and the like under *Kirby v. Illinois* (1972), 406 U.S. 682.

In contrast there is no "reliability of prior identification clause" under Fed. Evid. R. 801(d)(1)(C), but the federal courts borrow the reliability criteria from Fed R. Evid. 403 and 404. See 5 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* §801.23[2], p. 801-42 and notes (J. McLaughlin ed., 2d ed. 2009).

3:08 CV 1501                                          30

"[T]he trial court limited Detective Marik's testimony to exclude what Keith's mother and sister actually said." *Keith,* 2007 WL 2579619 at ¶56. The state appellate court approved and found no "specific" hearsay testimony had been admitted. See *Keith*, 2007 WL 2579619, at ¶58.  In effect the state appellate court found  Detective Marik's statement attributed to the Rosses were not hearsay, because their statements were not "specific hearsay."  Apparently the reasoning of the state decision was to avoid any Confrontation Clause infringement because, as mentioned previously, the Confrontation Clause applies only to hearsay.  The state appellate court determined, and the respondent agrees, that because the trial court sustained the defense's objections during redirect examination, no hearsay was "actually" admitted.


This reasoning is clearly incorrect. Ohio's Evidence Rule 801(A) like its federal counterpart, Fed. R. Evid. 801(a), defines "statement" to include both oral or written assertions or nonverbal conduct intended as an assertion. The hearsay rule applies to "assertions," not assertions using the exact words of the declarant or mimicry of declarant's actions.  Paraphrasing or not repeating the witness's statement *verbatim* does not exclude it from being hearsay. See *Harris v. Wainwright*, 760 F.2d 1148, 1152 (11th Cir. 1985)(testimony implying that non-testifying witness had furnished the police with evidence of defendants's guilt was inadmissible hearsay although not retold to the jury *verbatim*.); *Stedman v. Voorhies,* 2007 WL 1394159, at *27 (N.D.Ohio)("There is no requirement that a description of what a third party said is hearsay only if the description is a verbatim or near-verbatim report of what the third party said."); *Karnitis v. Kouskouris,*1975 WL 181879, at * 4 (Ohio App. 10 Dist.)("The fact that Dr. Dillahunt paraphrased the results of the study rather than quoting the exact language of the report does not make the evidence any less hearsay[.]").

3:08 CV 1501                                        31

Likewise, the second reason advanced in the state decision that the testimony was used to explain officer's course of action in investigation also does not remove the statement from being hearsay.  See *United States v. Baker*, 432 F.3d 1189, 1206 (11th Cir. 2005)(police officer's testimony about his investigation "revealed" that victim had identified defendant as shooter although not explicitly in those words, and was inadmissible hearsay); *United States v. Martin,* 897 F.2d 1368, 1371 (6th Cir. 1990) ("[E]ven if an out of court statement is purportedly offered to explain an investigation, it nevertheless may be inadmissible hearsay where it goes 'to the very heart of the prosecution's case.'"); In other words, the out-of-court statements of Diana and Tarissa Ross were offered as evidence to "prove the truth of the matter asserted"; to identify Keith and prove that he was one of the perpetrators in the videotape. See Ohio Evid. R. 801(C); Fed. R. Evid. 801(c).

The fact that the state trial court sustained defense counsel's objection to what allegedly was specifically stated to Detective Marik does not escape the obvious introduction of evidence that the Rosses had concurred in the information "that this defendant was involved." Detective Marik was used as a conduit for identification testimony so that at Keith's trial there were two additional identification witnesses who were not subject to cross-examination, in clear violation of the Confrontation Clause. See *United States v. Ariza-Ibarra*, 605 F.2d 1216, 1222-23, 5 Fed. R. Evid. Serv. (1st Cir. 1979)(district court committed reversible error in allowing the prosecution to introduce evidence of nonwitness informant's past identifications and reliability); and see 5 *Weinstein's Federal Evidence* §801.10[2][c], p. 801-12-801-13 and notes. Consequently, if it had been the intention of the state appellate court to dismiss the Confrontation Clause issue on the basis that there was no hearsay or no "specific" hearsay statement, then that too was an objectively unreasonable interpretation of Supreme

3:08 CV 1501                                     32

Court precedent and *Crawford*'s revision of the meaning of "firmly rooted" hearsay exceptions.

Accordingly, Detective Marik's testimony that Keith's mother and sister had concurred in information

that Keith had been "involved," was "testimonial" hearsay admitted into evidence contrary to Keith's

protection under the Confrontation Clause. The state decision was arguably "contrary to" *Crawford*

and clearly an unreasonable application of *Crawford*.


*I. Harmless Error Analysis:*

      The third and final reason advanced in the state decision was that there was no Confrontation

Clause violation because Keith was acquitted on the aggravated robbery of Lynn's. See *Keith,* 2007

WL 2579619 at ¶ 58.  This reason logically must be analyzed as part of  the final issue of harmlessness

of the constitutional infringement that occurred at Keith's trial  due to the admission of "testimonial"

hearsay. See *Lilly v. Virginia*, 527 U.S. 116, 139, 119 L.Ed.2d 1887, 1901, 144 L.Ed. 2d 117

(1999)(citing *Lee v. Illinois*, 476 U.S. 530, 547, 106 S.Ct. 2056, 2065, 90 L.Ed. 2d 514 (1986)); *Coy v.

Iowa*, 487 U.S. 1012, 1021, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988). When the state court

decision is either "contrary to" or an "unreasonable application" of clearly established Federal law

§2244(d)(1)'s preconditions for habeas relief are met, and the federal court on habeas corpus must

determine if the constitutional error was harmless whether or not the error was recognized in the state

decision and reviewed for harmlessness. See *Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir.

2007)(citing *Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007).


      The meter for harmlessness for violation of the right secured by the Confrontation Clause (or

for that matter any other constitutional right)  is "the prejudicial impact of constitutional error in a

3:08 CV 1501                                                33

state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht [ v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)]." *Hawkins v. Ganshimer* 286 Fed.Appx. 896, 902, 2008 WL 2611339, at *5 (6th Cir. 2008)(quoting *Fry v. Pliler*, 551 U.S. 112, 119-121, 127 S.Ct. 2321, 2327, 168 L.Ed.2d 16 (2007)); and see *Doan v. Carter*, 548 F.3d 449, 459 (6th Cir. 2008). [11] This standard comes with the caveat that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *Ferensic v. Birkett,* 501 F.3d at 481(quoting *O'Neal v. McAnich*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)). The Supreme Court went on to explain that "[b]y 'grave doubt' we mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Ferensic*, 501 F.3d at 481(quoting *O'Neal*, 513 U.S. at 435).

Who has the burden of demonstrating that trial error was harmless has been revisited in this circuit in *Gray v. Moore*, 520 F.3d 616, 625-26 & n.2 (6th Cir. 2008). There had been some incongruity between legal precedent within the circuit, but as *Gray* explains, the Supreme Court in *O'Neal* "plac[es] the risk of doubt on the State." *Id*., 520 F.3d at 625 (quoting *O'Neal*, 513 U.S. at

_____

[11] The meter of "harmless beyond a reasonable doubt" as used on direct review does not carry over into federal collateral review. Compare *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969)(citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)(same); *Coy*, 487 U.S. at 1021-22 (same). The Sixth Circuit made this absolutely clear in *Ferensic v. Birkett's* application of *Fry v. Pliler*, notwithstanding respondent's argument to apply *Chapman* and for this Court to reject *Brecht*. (See Answer p. 39, ECF # 15). In fact, well before *Fry*, the application of *Brecht*'s "substantial and injurious effect" standard to harmless error review of Confrontation Clause cases was recognized by the Sixth Circuit on habeas corpus review. See *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002); *Gilliam v. Mitchell*, 179 F.3d 990, 994-95 (6th Cir. 1999); *Norris v. Schotten*, 146 F.3d 314, 330 (6th Cir. 1998).

3:08 CV 1501                                           34

439, 115 S.Ct. at 996). Harmless error is not to be determined by whether "the party has borne its

burden." *Forensic*, 501 F.3d at 481.  Rather, the court is to ask,"Do I, the judge, think that the error

substantially influenced the jury's decision?" *Forensic*, 501 F.3d at 481(quoting *O'Neal*, 513 U.S. at

436-37)).


*J. Independent Review of Harmless Error:*

      Keith appears, however,  to presume that merely by establishing infringement of

Confrontation Clause protection, he succeeds.  He does not appreciate that additional review must

occur  on the question whether this error had a substantial and injurious effect on the verdict. The state

decision found the matter harmless due to Keith's acquittal on the aggravated robbery charge directly

connected with the surveillance video. The state decision neglected that the State's case was built on a

nexus between that video and the testimony of Mr. Bradshaw, owner of Crazy's, that the two

individuals portrayed were the same individuals who robbed Crazy's.   Detective Marik's testimony

about identification of Keith by his mother and sister  indeed was significant and conveyed more  than

a mere description of police procedure. As instructed by *Forensic*, the reviewing habeas court must

independently assess whether Keith's inability to challenge hearsay identification admitted contrary to

the Confrontation Clause constituted harmless error under federal habeas corpus standards. See *id*.,

501 F.3d at 472-73. In making this determination the court must give "complete deference to . . . the

state court's findings of fact supported by the evidence." *Forensic*, 501 F.3d at 473 (quoting *McAdoo

v. Elo*, 365 F.3d 487, 493-94 ( 6th  Cir. 2004).  In this matter, the question is clearly answered that the

constitutional error did not substantially influence the jury's decision because hearsay statements were

not  the only evidence identifying Keith.

3:08 CV 1501                                             35

The state trial court record began with the fact that  Detective Marik identified " the second perpetrator in the videotape was Keith, but wanted a second opinion." *Keith*,  2007 WL 257961, ¶ 19. The record supported the detective's independent identification of Keith, which was confirmed later by Keith's mother and sister. Detective Marik testified on direct examination that  "when I saw the person on the videotape that is the person I thought it was," and "information came in and my assumption was right" which "confirmed" his suspicion from Keith's mugshot (Trial Tr. 354-55, ECF # 18).  Detective Marik testified repeatedly that he viewed the videotape several times, found a previous picture of Keith, and was able to identify him as the second person in the video. (Trial Tr. 354, 355, 363-64, 370-71, 372-73, 381). He was absolutely sure about the identity of Shaiton Andrews, the other robber on the video due to prior dealings with him.  The detective's testimony shows that although he was not familiar with Keith, he could make the identification from Keith's mugshot and he was "sure" of this identification. (Trial Tr. 370, 372, 381).  The detective also testified about Keith's disappearance following the robberies and his subsequent apprehension by law enforcement officers in Indianapolis from Keith's mugshot a year afterward. (Trial Tr. 356-61). Finally, the detective testified that Andrews' girlfriend was Tarissa Ross (Keith's sister), Andrews was living with Tarissa Ross, and that two pairs of  sunglasses and a "skullcap or a handkerchief" or "bandana" (as worn by the second person in the video), were found in the search of her home along with clothing worn by Andrews found in the home and in a trash can two houses down.  (Trial Tr. 364-68, 374, 385-86).

The identification evidence related in violation of Keith's right of confrontation was merely cumulative of Detective Marik's identification, and not critical to Keith's conviction. Compare

3:08 CV 1501                                                36

*Vasquez v Jones*, 496 F.3d 564, 576 (6th Cir. 2007); *Stapleton v. Wolfe*, 288 F.3d 863, 865-68 (6th Cir. 2002). There was more than some overlap in detail, and there were no material differences in the corroborating "testimony" from Keith's mother and sister about the identity of Keith as the second person in the video.  Compare *Vasquez*, 496 F.3d at 576 (explaining that some overlap in the stories does not render one cumulative);  *Stapleton*, 288 F.3d at 867. The admission of the hearsay statement in light of other evidence of record demonstrates that  there had been no "substantial and injurious effect" on the verdict due to the "testimonial" evidence about Keith's mother and sister confirming the detective's own independent identification. The Confrontation Clause infringement was therefore, harmless.


**IV.  Ground 4- Insufficient Indictment:**

*A: Facts and Argument:*

        After conviction, Keith pursued a motion for new trial based on insufficient indictment referencing the subsequently decided decision in *State v. Colon*, 118 Ohio St. 3d 26 (2008). See  Resp. Ex. 19-24; *State v. Keith*, 118 Ohio St.3d 1435 (Table Jun. 4, 2008). *State v. Colon* announced a new rule that "When an indictment fails to charge a *mens rea* element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." *Id*.,118 Ohio St.3d 26, 26, 885 N.E.2d 917, 2008 -Ohio- 1624 (2008)(syllabus). Keith argues that the Ohio Supreme Court ruled that an indictment charging the offense solely in the language of the statute is insufficient and the indictment constitutionally defective.  Respondent counters that this ground is not cognizable because there is no federal constitutional right to an indictment let alone any particular wording.

3:08 CV 1501                                       37

*B: Analysis:*

First, respondent is correct that Keith's fourth ground is not cognizable, but respondent's foundation for this argument is incorrect.  Contrary to respondent's position, as a matter of federal constitutional law:

> No principle of procedural due process is more clearly established than that notice of the specific charge, and chance to be heard in trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceedings in all courts, state, or federal . . .

*Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed.644 (1948).

The Constitution only requires, though, that whatever charging method a state employs, the state must give a defendant fair notice of the charges to permit adequate preparation of his defense, so "that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged."  *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988); *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Combs v. Tennessee*, 438 F.2d 695, 698 (6th Cir. 1976) *cert. denied*, 425 U.S. 954 (1976); *In re Ruffalo*, 390 U.S. 544 (1968). The law is clear that "[b]eyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker,*  316 F.3d 557, 570  (6th Cir. 2002) (citing  *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986) ). [12]

---

[12]  "The indictment here had sufficient information to provide petitioner with adequate notice and the opportunity to defend and protect himself against future prosecution for the same offense. Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding."

*Mira*, 806 F.2d at 639.

3:08 CV 1501                                    38

Keith, on the other hand has procedurally defaulted on this claim. The Ohio Supreme Court has

very specifically stressed that this is a  new rule which has no retroactive application. See *State v.*

*Colon (Colon II)*, 119 Ohio St. 3d 204, 893 N.E.2d 169, 2008-Ohio-3749 (2008).  Consequently, Keith

has no leverage to raise this argument with any chance of success, since his motion for leave to appeal

was denied by the Ohio Supreme Court on February 6, 2008 and *Colon* was announced on April 9,

2008. See *State v. Keith*, 116 Ohio St.3d 1507 (Table Feb. 6, 2008)(order denying leave for direct

appeal).


Next  Keith's argument (now dressed in Fourteenth Amendment garb), is not cognizable.

Keith's reference to the Due Process Clause is "not sufficient to alert a state court that an appellant is

asserting the violation of a specific constitutional right." *McMeans,* 228 F.3d at 682. His argument

based on *State v. Colon*, moreover, is not a federal constitutional principle- it is the Ohio Supreme

Court's interpretation of state constitutional principles, specifically Article I, Section 10 of the  Ohio

Constitution. See *Colon*, 118 Ohio St.3d at 29, 885 N.E.2d at 921.  Federal habeas corpus is reserved

for federal constitutional claims, not allegations that state law has been violated. See *Smith v. Phillips*,

455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)("Federal courts hold no supervisory authority

over state judicial proceedings and may intervene only to correct wrongs of constitutional

dimension."); *Sanchez-Llamas v. Oregon*, 548 U.S.331, 345, 126 S.Ct. 2669, 2679, 165 L.Ed.2d 557

(2006)(same).


Finally, the indictment was sufficient under Fourteenth Amendment Due Process since it

"referenced the principal statutes for the mens rea requirement, and thus [Keith] could have located

3:08 CV 1501                                              39

the statutes and determined the mental states required for the offenses with which he was charged."

*Williams v. Haviland*,  467 F.3d 527, 536 (6th Cir. 2006); and see *United States v. Martinez*, 981 F.2d

867, 872 (6th Cir. 1992).


### *CONCLUSION AND RECOMMENDATION*

Petitioner, Ontrayis Keith, has not demonstrated that he is in custody pursuant to a judgment of

the state court which resulted in a decision that was contrary to or involved an unreasonable

application of clearly established Federal law as determined by the Supreme Court of the United States

or was the result of a decision based on an unreasonable interpretation of the facts in light of the

evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2). There has been no

demonstrated need for an evidentiary hearing.  It is recommended that this application for habeas

corpus be denied and dismissed in its entirety.




                                    s/James S. Gallas
                                United States Magistrate Judge

Dated: August 12,  2009


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within
ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES
the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d
947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

3:08 CV 1501                                    40